## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Ryan P. McKone, being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge and belief:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since March 2015.  Prior to being employed by ATF, I was employed as a police agent with the City of Lakewood Police Department for 10 years.  I was a patrol officer for 4 years and a detective assigned to the Major Crimes Unit for 6 years. I am a graduate of the Federal Law Enforcement Training Center, and the ATF National Academy in Glynco, Georgia. My primary duties involve the investigation of Federal firearm violations and their associated use in violent crime and narcotics violations.  I am currently assigned by ATF to the Denver IV Field Office on special assignment to the Denver Police Department Homicide Unit, where I work jointly with sworn law enforcement officers of state and local agencies throughout the District of Colorado. During my law enforcement career, I have authored several search warrants and arrest warrants, production of records requests, and requested court orders for all matters of evidence, including but not limited to, real property, vehicles, persons, electronic information, website information, cellular phone information, vehicle tracks, and biological evidence.

2.      As an ATF Special Agent, I am familiar with federal criminal laws pertaining to firearms, explosives and narcotics violations.  I know that it is a violation of Title 18 USC § 922(g)(5) for any person who is an alien in the United States illegally or unlawfully to possess a firearm or ammunition.

3.      I assert that there is probable cause to believe Felix Missael ALVA, date of birth 10/22/1990, has violated 18 U.S.C. § 922(g)(5)(a) (*possession of firearm/ ammunition by a*

1

*person illegally or unlawfully in the United States*).  The statements set forth in this affidavit are based upon my training and experience, consultation with other experienced investigators, agents, and other sources of information related to this and other firearms investigations.  This affidavit is intended to set forth probable cause in support of the criminal complaint and arrest warrant and does not purport to set forth all of my knowledge regarding this investigation.

## INVESTIGATION

4.      Based upon my work in a current investigation, I am familiar with Felix Missael ALVA.

5.      Starting on May 28, 2020, demonstrations occurred in Denver, CO in response to the George Floyd incident in Minneapolis, MN.   The demonstrations devolved in violent and destructive riots directed towards law enforcement, destruction of government property, businesses being burglarized, and large scale mayhem and civil unrest around downtown Denver. On May 30, 2020, Denver Police Department District 6 Narcotics Unit Detective Foster was working in a plain clothes capacity on the south side of 1450 Washington St, which is known to be in the City and County of Denver, in the State and Federal District of Colorado. Det. Foster was conducting physical surveillance of the active riots/ demonstrations.  At approximately 2108 hours as Det. Foster was walking westbound through the east/west alley on the south side of 1450 Washington St. when a white Jeep Cherokee driving southbound on Washington St, stopped next to Det. Foster.

6.      Det. Foster stood on the passenger side of the white Jeep Grand Cherokee and initially believed the license plate to be Colorado plate QEZ-060; it was later learned the plate is actually OEZ-060.  The front passenger window of the vehicle was completely rolled down and

Det. Foster observed what he described as a "Hispanic male, approximately in this 30s with a medium to heavy build." Det. Foster was not able to see or identify the driver.   The male passenger looked at Det. Foster and stated "Hey homie!"   Det. Foster turned to face the male passenger.   Det. Foster estimated he was approximately 10 feet in distance from the Jeep.   The male passenger told Det. Foster "This ain't no peaceful protest, fuck twelve!" and referenced "pigs" as well.   The slang terms "twelve" and "pigs" are in reference to law enforcement and typically used in a negative connotation.

7.      The male passenger then produced a large black semi- automatic handgun and held it down beneath the window before beginning to tap the muzzle on the side of the Jeep's passenger door.

8.      The male looked at Detective Foster and stated, "This ain't no peaceful protest." The male then began to point with his left hand upwards at the Denver Police Department helicopter, DPD Air1, which was flying just overhead, and mentioned that his firearm was for "them". Another pedestrian began to tell the male passenger to "Put your gun away!" however, the passenger instead replied, "Nah fuck that, this is for them!" before opening fire upwards into the air. Det. Foster observed that both the DPD Helicopter and the 9 News helicopter were overhead and in the proximity in which the male was firing the handgun. Det. Foster believed that the male was shooting towards the helicopters overhead.   Det. Foster believed this based upon what the male had said prior to firing the handgun and where the male aimed the firearm. Det. Foster turned and began to run westbound towards Pearl Street out of fear of being shot and killed. Det. Foster heard approximately six (6) to ten (10) gun shots. Detective Roybal (13031) and Officer Gambone (16019) were on the east side of the Jeep during this shooting and

3

observed the passenger fire his weapon into the air.  The driver of the Jeep sped off southbound then turned westbound on 14th Avenue (a one-way for eastbound traffic only).

9.     Det.Foster contacted the Denver Police Department 911 communication center and inquired as to whether any citizens called to report the gunfire. Det. Foster learned that on 5-30-2020 at 2111 hours a resident, George Gwynn (7- 28-1962) called 911 to report gunfire at 14th Avenue and Pearl Street. Det. Foster contacted Gwynn by phone then responded to his residence. Gwynn advised that he heard a large uproar and stepped out onto his second-story balcony to capture a video of the crowd for one of his out-of-state family members. Gwynn advised that he heard several gunshots coming from Washington Street. Gwynn reported that when the gunshots reached 14th Avenue he heard a projectile of some sort fly past his head. Gwynn stated that he observed a white Jeep turn the wrong way down 14th Avenue at which point numerous demonstrators were yelling at the driver to advise them. Gwynn believed the driver may have turned north onto Pearl Street. A written statement was collected from Gwynn.

10.     Det. Foster queried license plate number QEZ-060 via law enforcement database "Lumen" and found that on 4-29-2020 at 1010 hours an Aurora Police Department license plate reader (LPR) scanned this plate near Havana Street and Del Mar Parkway. Det. Foster reviewed the photograph of the vehicle from the scan and observed that the license plate was attached to a white Jeep Grand Cherokee. However, other LPR photos came back showing this plate number associated with a white 2002 Chevrolet Van.  Det. Foster provided LPR photos of the suspect vehicle to DPD Crime Analyst Horvat.  Analyst Horvat examined the images and noticed that the first digit in the photo of the Jeep was O and not Q. Det. Foster concurred and suspected that he may have mis-read the license plate, as the Aurora PD LPR did as well. Det. Foster queried

4

OEZ060 and found that it is assigned to a 2014 white Jeep Cherokee and registered to AS of 910 Nile Street. Det. Foster found this to be the same general area as the Aurora PD LPR misread.

11.     Det. Foster searched the High Activity Location Observation (HALO) cameras and located the suspect vehicle at the following times and locations from directly before the shooting:

- 2105:45  - Vehicle is westbound Colfax Avenue in the #1 lane at Gilpin Street.

- 2106:34  - Vehicle is westbound Colfax Avenue in the #2 lane at Downing Street.

- 2106:48  - Vehicle is westbound Colfax Avenue in the #1 lane at Corona Street. Detective Foster observed the front seat passenger standing up through the large sunroof of the vehicle who appears to be recording a video on his cell phone.

- 2107:15  - Vehicle is westbound Colfax Avenue in the #1 lane at Emerson Street.

- 2107:47  - Vehicle is westbound Colfax Avenue and merges into the left turn only lane for southbound Washington Street, and turns southbound into the 1400 block of Washington Street.

12.     On June 2, 2020 at approximately 0815 hours, Det. Foster responded to 910 N. Nile Street and located a white Jeep Grand Cherokee in the driveway with Colorado license plates OEZ060. Det. Foster found that this appeared to be the same vehicle from which a male suspect opened fire with a handgun on 5-30-2020. Det. Foster authored a search warrant for the Jeep Grand Cherokee. On 6-2-2020 at 1041 hours a search warrant for the vehicle was issued by the Honorable Judge Zobel.

13.     Det. Foster responded to 910 Nile Street in Aurora, CO with uniformed officers from the Denver and Aurora Police Departments. Det. Foster found the vehicle parked in the driveway. At Det. Foster's direction, the vehicle was impounded. Det. Foster knocked on the door of the residence to speak with the occupants inside. A female came to the door before

5

slamming it closed and engaging the locks. The female then went to the front window of the residence and opened it to speak with law enforcement. Det. Foster recognized this female from reviewing her DMV dossier photograph as AS, the registered owner of the vehicle. AS began to shout at Det. Foster that he was "violating [her] rights" and violating her "free speech". AS advised that she wanted to speak with Det. Foster, but emerged moments later with her cell phone recording a video and shouting.

14.     AS's Jeep was loaded onto the tow truck and escorted by Denver Police Det. Wingard to a secure vehicle processing bay at DPD Traffic Operations. Crime Scene Technicians from the Denver Crime Lab responded, captured digital photographs of the vehicle, and processed the vehicle for gunshot residue, latent prints, and DNA. Det. Foster observed anti-police protest signs in the rear seat area of the vehicle. Det. Foster also located a large box of artillery shell fireworks; the same type rioters were using to throw at police officers throughout the week.

15.     Det. Foster returned to the District Six sub-station after the vehicle was processed. Det. Foster queried AS's vehicle via DPD records. Det. Foster found that on October 13, 2020 Felix ALVA GONZALEZ (dob: 10-22-1990) and Uriel Gonzalez (dob: 9-18-1994) were contacted inside the vehicle by officers in District 5 before Uriel Gonzalez was arrested for DUI and possession of a controlled substance (2019-654931). Det. Foster reviewed the body worn camera footage associated with this contact, specifically from Officer Jones (15087) as he spoke with ALVA. ALVA advised that the Jeep belonged to his wife, and he provided his address as 910 N. Nile Street in Aurora, CO. Det. Foster recognized ALVA's voice as sounding consistent

with the shooting suspect from 5-30-2020. Det. Foster observed that ALVA had an appearance consistent with the shooting suspect on 5-30-2020.

16.     Det. Foster queried ALVA via Colorado DMV records and found that he does not have a driver's license but was assigned OLN 17-094-2034 and has an address listed as 910 N. Nile Street in Aurora, CO.

17.     On June 04, 2020 at approximately 0615 hours the Aurora SWAT Team executed a search warrant of the residence at 910 Nile St, that Det. Forest had obtained. The residence was surrounded by SWAT members and the occupants were ordered out of the residence. Both Felix ALVA and AS exited the residence with their two small children. ALVA was detained in handcuffs due to the serious nature of the search warrant. Det. Foster approached ALVA and, upon seeing him in person, immediately recognized him with certainty as the individual who fired a handgun into the air on the evening of May 30, 2020, while two helicopters were overhead.   Det. Foster heard ALVA speak and immediately recognized his voice as the same individual.

18.     Det. Foster spoke with ALVA away from AS and the children. ALVA stated he wanted to talk to Det. Foster. Det. Foster advised ALVA of his Miranda Rights which he advised that he understood before agreeing to answer questions. Det. Foster asked ALVA if he lived at the residence, which he confirmed. Det. Foster asked ALVA what they did over the weekend at which time ALVA advised that they went fishing and "visited Denver." Det. Foster asked ALVA what they did on Saturday night and asked if they went to the protests downtown. ALVA advised that they did attend the protests, but could not remember if it was Friday or Saturday night. ALVA advised that he does not drive the Jeep, and rides as a passenger, and later stated that the

only people in the Jeep were he and his wife or "just us two." ALVA denied shooting a gun or owning a gun. Det. Foster asked ALVA if there were any firearms in the house. ALVA told Det. Forest to ask his wife. ALVA denied firing any guns but stated that they were lighting off fireworks from the Jeep, though he denied throwing them at the police.

19.     Once the residence was secured, officers and detectives began to walk around the residence and ensure that nobody was inside which SWAT may have missed. Ofc. Gonzalez observed an open shed in the back yard of the residence. The shed was large enough that numerous persons could be standing inside of it. Ofc. Gonzalez walked to the shed and observed, on a shelf on the south side of the shed, a box which she immediately recognized to be consistent with a "gun box", or the packaging that firearms are sold and/or stored inside. Ofc. Gonzalez was standing outside of the shed looking in through the open door when she observed the gun box. Det. Foster observed this same box, corroborated Ofc. Gonzalez's opinion that it appeared to be a firearm storage container and confirmed that the outbuilding was not included in the original search warrant. Det. Foster found that probable cause existed to believe that the outbuilding shed contained one or more of the listed items on the original search warrant. Det. Foster responded back to the District Six sub-station and added an addendum to the search warrant affidavit and search warrant to include this shed. This additional warrant was issued by the Honorable Judge James Zobel on 6-4-2020 at 0916 hours.

20.     Inside of the shed officers located a Hi-Point Model JMP, .45 caliber handgun, serial number 4129745.  ATF SA Timothy Pine confirmed that this weapon travelled in interstate commerce and was manufactured outside the Federal District of Colorado.  This firearm was

later test fired for NIBIN testing purposes and found to function as designed and is capable of expelling a projectile by means of explosion.

21.     As Det. Foster stood on a stool to capture digital photographs of the gun box in the shed, he turned to find the holster and cleaning kit concealed on the top wooden 2x4 on the north side of the shed. Det. Foster immediately recognized this Hi-Point to be the same gun he observed on May 30, 2020, and recognized several unique characteristics of the firearm. Specifically, Det. Foster recognized the sloped angle at the rear of the slide assembly behind the rear sight, and the large magazine base which protruded forward of the pistol's grip area. Detective Foster found that both of these characteristics are very unusual based on his experience with handguns.

22.     Law enforcement records checks revealed that ALVA is not a native or citizen of the United States and that he has previously been deported from the United States. I, SA McKone, conferred with agents of Immigration and Customs Enforcement who reviewed ALVA's immigration file and relevant databases. ICE agents confirmed that in 2010, ALVA was placed into removal proceedings before an Immigration Judge. He appeared detained in those proceedings and was ordered removed for being an alien inadmissible under Section 212 of the Immigration and Nationality Act. In February 2010, he was deported from the United States to Mexico pursuant to that removal order. ICE agents confirmed that ALVA has not made any lawful entries to the United States and on May 30, 2020, he was present in the United States illegally.

## CONCLUSION

23.     Based on the aforementioned information, probable cause exists to believe that on May 30, 2020, in the State and District of Colorado, the defendant, Felix Missael ALVA, an alien present in the United States illegally and unlawfully, did knowingly possess a firearm and ammunition in and affecting interstate commerce; in violation of Title 18, United States Code, Section 922(g)(5)(A).

I, Ryan McKone, being duly sworn according to law, depose and say that the facts stated in this foregoing affidavit are true and correct to the best of my knowledge, information and belief.

*s/Ryan P. McKone*
Ryan P. McKone
ATF Special Agent

Sworn to before me this  13th  day of August, 2020.

The Hon. Scott T. Varholak
United States Magistrate Judge

**This affidavit was reviewed and is submitted by Dorothy DiPascali, Special Assistant United States Attorney.**

10